Argued and submitted September 19, reversed and remanded with instructions
November 15, 1995

Leonard W. LOCKE,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Tinker Toy Fence Posts,
*Respondents.*

(94-AB-2192; CA A86252)

905 P2d 1172

Kathleen G. Dolan argued the cause for petitioner. With her on the brief was Lane County Legal Aid Service, Inc.

Philip Schradle, Assistant Attorney General, waived appearance for respondent Employment Department.

No appearance for respondent Tinker Toy Fence Posts.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON. J.

Claimant seeks review of a decision of the Employment Appeals Board (Board) denying him unemployment benefits on the ground that he was discharged for misconduct. ORS 657.176(2)(a).[1] We reverse and remand.

Claimant worked for employer, a fence post manufacturing company located in Junction City, for nearly four years. During almost all of that time, claimant and the company's owner, Haag, were the company's only two employees, with claimant being generally responsible for operating equipment and for sales. On April 13, 1994, claimant told Haag that he was suffering back pain and asked to take a few days off from work. Haag, who knew claimant had experienced back problems in the past, agreed. At that time, both claimant and Haag expected that claimant would return within a few days. After a few days, however, claimant's back was still bothering him, so he told Haag that he was not ready to return to work and that he intended to file a workers' compensation claim. On April 19, employer hired another person, as a temporary replacement, to "fill in" for claimant until he could return to his regular work.

In late April, claimant obtained treatment from a chiropractor and told Haag that he believed he could return to work within a week. Haag responded that, before claimant could return to work, he must obtain a work release, signed by a medical doctor, releasing him to perform full-time, full-duty work.[2] Claimant did, in fact, obtain and present to Haag a work release, which permitted him to return to "regular duty" work on April 25, 1995. However, claimant did not report to work until April 27, and when he did so, he gave Haag a note from a second doctor, indicating that he could not return to work until some test results were processed.

---

[1] ORS 657.176(2)(a) provides, in part:

"(2) An individual shall be disqualified from the receipt of benefits * * * if the authorized representative designated by the director finds that the individual:

"(a) Has been discharged for misconduct connected with work[.]"

[2] Haag explained that the employer's workers' compensation carrier, SAIF, required such a release.

In early May, claimant told Haag that he needed some money, and Haag offered to pay claimant to do a few hours of light welding work. Claimant agreed to do so, but then changed his mind, apparently because he believed the amount he would earn would not justify his commute from Lorraine, in rural Lane County. Claimant did not, however, call Haag to tell him that he was not coming. When claimant failed to appear, Haag assumed that it was because his back was still bothering him. Thereafter in May, claimant contacted Haag a few times but did not indicate when he would be able to resume working.

Claimant testified that he brought Haag a doctor's note on June 1, 1994, releasing him to perform light-duty work. Haag testified that he never saw the note, and that even if he had, claimant would not have been able to work because regular, light-duty work was not available at that time. In all events, claimant never obtained a medical release permitting him to perform full-duty, full-time work.

On June 7, 1994, claimant applied for unemployment benefits. The referee granted claimant unemployment benefits, finding that he had been discharged, but not for misconduct. On review, the Board, with one member dissenting, reversed, concluding that claimant had been discharged from his job for "misconduct" within the meaning of OAR 471-30-038(3). That rule, as pertinent, defines misconduct as

"willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee, * * * [or] [a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest."[3]

The Board's determination was predicated on the following finding:

"(3) The employer discharged claimant because he failed to keep the employer apprised of his medical condition, because he failed to return to work several times on the dates

---

[3] OAR 471-30-038(1)(b) defines "wantonly negligent" as:

"[I]ndifference to the consequence of an act or series of actions or a failure to act or a series of failures to act where the individual acting or failing to act is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards which an employer has the right to expect of an employee."

that he indicated he would do so and because the employer assumed that claimant no longer wished to work for the employer."

From that finding, the Board reasoned:

"[C]laimant wilfully violated the employer's expectations by failing to keep the employer apprised of his medical progress and by failing to report to work as promised, on April 18, April 25 and sometime in early May, when he was scheduled to perform some light duty work.

"* * * * *

"Claimant's repeated failure to appear for work as promised, and his failure to regularly inform the employer of his medical progress, expressed his indifference to the consequences of such omissions. Therefore, we conclude that claimant was, at best, wantonly negligent in his actions and, therefore, committed misconduct connected with work."

Claimant challenges the Board's determination, arguing, *inter alia*, that the Board's finding 3, which is the predicate for its ultimate conclusion, is not supported by substantial evidence in the record. ORS 183.482(8)(c). He asserts, particularly, that, even if his conduct could be deemed "misconduct" (which he disputes), the Board's finding that employer discharged him "*because*" of that conduct is unsupported. We agree.

There is no evidence in this record that employer was motivated by claimant's failure to return to work on April 18 or April 25, his failure to appear for the welding job in early May, or his failure to inform employer more consistently of his medical status. Indeed, all evidence is to the contrary. According to Haag, when claimant told him that he could not return to work on April 18 because additional chiropractic treatment was necessary, Haag responded that that would be "fine." Haag further testified that he would not have permitted claimant to resume work on April 25 without a release for full-duty work and that when claimant did not appear to do the welding job, Haag "assumed that he was unable to go to work" because he "felt like his back was in too bad a shape to where he didn't want to come in and do any welding." Finally, Haag stated:

"[Claimant] left his job because of a pre-existing sore back and failed to return to work week after week saying he would

be here next week. Doctors released him for work but later said he could only do light-duty 25% back with no lifting or bending. I have only one employee and have no light-duty jobs available. So *he was permanently replaced because SAIF advised me he would and could not ever return without 100% full medical release.*" (Emphasis supplied.)

Thus, by employer's own admission, claimant was discharged not because of the "misconduct" upon which the Board relied, but because he was physically unable to perform his job.

The Board's finding that employer discharged claimant because of the conduct described in finding 3 is not supported by substantial evidence in the record. Because that finding was central to the Board's conclusion that claimant was discharged for misconduct and its consequent denial of benefits, we reverse and remand the Board's order with instructions to allow benefits.

Reversed and remanded with instructions to allow benefits.